NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
LEO REED, pro se                       :
                                       :
                                       :   Civil Action No.: 06-cv-3496(FLW)
               Plaintiff,              :
                                       :   **OPINION**
       v.                              :
                                       :
STRANIERO, et al.,                     :
                                       :
               Defendants.             :
_____ :

**WOLFSON**, **United States District Judge:**

   This cause of action arises from the 2004 arrest of pro se Plaintiff Leo Reed ("Plaintiff"). Plaintiff alleges that on June 25, 2004, a group of local police officers, federal agents, and county prosecutor agents, in the process of effectuating Plaintiff's arrest for failing to appear at his sentencing hearing in New Jersey Superior Court, Mercer Vicinage, assaulted Plaintiff when they collectively threw him through a glass sliding door and proceeded to further assault Plaintiff while he was unconscious.  In his Complaint and Amended Complaint, Plaintiff alleges, pursuant to 42. U.S.C. §1983, violation of his Eighth Amendment right to be free from cruel and unusual punishment, and state claims for assault and battery.  Over the course of this litigation, several Defendants have been

1

dismissed either voluntarily by Plaintiff or by order of this Court.[1] Presently before the Court is a Motion for Summary Judgment by Defendants Lieutenant Straniero, Sargent Frascella, Detective Angarone, Detective Schoellkopf, Detective Kenyon, Dective Barbato, and Detective Martinez (collectively "Mercer County Defendants"), a group of officials and agents with the Mercer County Prosecutor's Office ("MCPO").  The Court has reviewed the parties' submissions, and for the reasons stated below, Mercer County Defendants' Motion for Summary Judgment is granted and all claims against the Mercer County Defendants are dismissed.

## I. Factual Background and Procedural History

The basic factual background for the present motion remains the same as it was in the Court's previous recitation of the facts in its November 13, 2007 Opinion, Reed v. Straniero, No. 06-3496, 2007 WL 3430935 (D.N.J. Nov. 13, 2007):

> Plaintiff was a fugitive who failed to appear for his state court sentencing. Amended Complaint ("Am.Compl.") at 4. On June 25, 2004, The NJ/NY Regional Fugitive Task Force opened a fugitive case on Plaintiff. Id. On July 16, 2004, a task-force of officials, including investigators from various prosecutor's offices and departments of correction, United States Marshals, sheriffs at various sheriff's departments, and detectives and special agents employed at various police departments and federal agencies, Complaint ("Compl.") at ¶¶ 9-13, apprehended Reed at the Howard Johnson Motel in Lawrence, New Jersey. Am. Compl. at 4.
>
> Although Plaintiff alleges that all members of the task force applied excessive force against him, Am. Compl. at 2, it seems clear from the Mercer County Prosecutor's Office Investigation Report attached to Plaintiff's Amended Complaint that only a subset of the task force was actually inside Plaintiff's hotel room when he was arrested. Id. at 3-7. Plaintiff alleges that, "[a]t approximately 1:15 a.m ... the door was breached by numerous individuals attired in clothing marked 'Police,' who stormed into the room

---

[1] Besides the Mercer County Defendants, Hamilton Police Officers Gadsby and Diszler remain in the case after this Court previously denied their summary judgment motion with respect to Plaintiff's excessive force claims.

> with weapons drawn. Upon observing this development, plaintiff placed both of his hands in the air above his head and awaited instructions from the officers ... [P]laintiff was charged at by defendant Casey and other officers and forcibly pushed out of the rear sliding glass door. The rear sliding glass door shattered in many pieces as plaintiff fell through onto the small rear deck of the hotel room. Plaintiff was then dragged back into the hotel room, through the shattered glass, and handcuffed." Compl. at ¶ ¶ 17-21. Importantly, Plaintiff alleges that "[a]t no time during this incident did plaintiff resist arrest, disobey any instructions given to him by the officers, or attempt to flee from the scene." Id. at ¶ 23. As a result of Defendants' alleged use of excessive force, Plaintiff "has permanently loss [sic] his ability to operate his left lower leg, and has experienced, and continues to experience, mental anguish." Id. at ¶ 25.
>
> On August 7, 2006, the Court granted Plaintiff's application to proceed in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Liberally construing the substance of Plaintiff's Complaint, see Haines v. Kerner, 404 U.S. 519, 520 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir.1992), the Court read it to set forth a Fourth Amendment excessive force claim with respect to Plaintiff's arrest procedure. Reed v. Straniero et al., No. 06-3496, 2006 WL 2331107, *3 (D.N.J. Aug.10, 2006). The Court instructed Plaintiff to amend his Complaint to indicate the personal involvement of each of the Defendants in his arrest, Id., and in response, Plaintiff alleged the personal involvement of all Defendants. Am. Compl. at 2.

Reed, 2007 WL 3430935, at *1-2.

Subsequent to the Court's decision on November 13, 2007, this Court granted Defendants Rivera, Ruocco, and Wentworth's Motion for Summary Judgment on August 21, 2008. In addition, the Court denied the Mercer County Defendants' Motion for Summary Judgment, having been informed that they did not properly serve Plaintiff with their moving papers. Thus, this Court gave Plaintiff twenty days from the filing of its August 21, 2008 Opinion and Order to inform the Court of his desire to proceed with his remaining claims. After Plaintiff was properly served with this Court's August 21, 2008 Opinion, Plaintiff informed this Court via letter dated October 18, 2008 that he did indeed wish to pursue his claims against the remaining defendants. On a conference call with the Honorable Tonianne J. Bongiovanni, U.S.M.J. ("Judge Bongiovanni") on February 3, 2009,

3

the parties, including Plaintiff,[2] consented to a date for Plaintiff to be deposed. Mercer County Defendants initially filed a Motion for Summary Judgment on January 1, 2009, which this Court denied without prejudice on July 6, 2009 for failure to comply with Local Rule 56.1.

Mercer County Defendants filed the present Motion for Summary Judgment on August 7, 2009. Plaintiff has failed to file opposition thereto. For the reasons that follow, the Mercer County Defendants' Motion for Summary Judgment is granted.

## II. Discussion

### A. Motion for Summary Judgment

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be

---

[2]The Court notes that besides this conference call, Plaintiff has done little to participate in the current litigation, having failed to submit oppositions to motions and failing to comply with several discovery orders. The Court will further address Plaintiff's dilatoriness, see infra.

material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am.,

Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

However, if a non-movant fails to oppose the motion, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.3d 168, 175 (3d Cir. 1990); Damiano v. Sony Music Entm't, 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiff's argument was unopposed, and thus no genuine issue of material fact was created). The motion is appropriately granted when the movant is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175. When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. IRS, No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assocs., 922 F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D.Pa. March 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir. 1988); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n.8 (E.D.Pa. June 20, 2000).

**B. Plaintiff's Excessive Force Claim Under the Fourth Amendment**

Initially, Mercer County Defendants contend that Plaintiff may not proceed with an Eighth Amendment claim for cruel and unusual punishment given that Plaintiff's allegations are of the nature that do not typically trigger Eighth Amendment concerns. The Mercer County Defendants are certainly right to doubt whether the Eighth

Amendment applies to Plaintiff's factual allegations.  Indeed, the Mercer County Defendants would have to look no further than this Court's three previous opinions where the Court plainly addressed  Plaintiff's constitutional claim for excessive force under the Fourth, and not the Eighth, Amendment.   Nevertheless, in urging this Court to dismiss Plaintiff's constitutional claim for improperly relying on the Eighth Amendment, the Mercer County Defendants patently disregard the Court's previous ruling that Plaintiff's Complaint adequately pleads a Fourth Amendment claim for excessive force.  At this stage in the litigation, after a complaint has survived several challenges to the sufficiency of its pleadings, a defendant cannot argue that a constitutional claim should be summarily dismissed because a pro se plaintiff is not keenly aware of which constitutional amendment governs his claims.  Certainly, the law does not hold pro se parties to such a standard nor require the Court to, in draconian fashion, dismiss claims on such grounds.  Accordingly, the fact that Plaintiff alleges that his claims arise under the Eighth Amendment, as opposed to the Fourth Amendment, is of no import at this stage.

**C. Plaintiff's Claims against Mercer County Defendants in Their Official Capacities**

The Mercer County Defendants assert that Plaintiff's federal claims are barred to the extent they are asserted against them in their official capacities.  The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The amendment precludes federal jurisdiction over a state absent the state's consent to suit. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  The immunity from

suit extends to agencies, departments and officials of the state when the state is the real, substantial party in interest.  Id. at 101-02; Alabama v. Pugh, 438 U.S. 781, 781 (1978).

Sovereign immunity applies "'even though the state is not named a party to the action as long as the state is the real party in interest.'" Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999) (quoting Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989); Febres v. Camden Board of Education, 445 F.3d 227, 229 (3d Cir. 2006) (declining to extend sovereign immunity to school board because it was autonomous from the state); Beightler v. Office Of The Essex County Prosecutor, 2009 WL 2562717, at *2 (3rd Cir. Aug 20, 2009) (applying Fitchik).   Thus, a plaintiff may not evade or circumvent a defendant's assertion of sovereign immunity by purposefully omitting the state as a formal party to a complaint. Chisolm v. McManimon, 275 F.3d 315, 322-23 (3d Cir. 2001).  In Fitchik, the Third Circuit held that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d at 659.  In other words, sovereign immunity is appropriate if the named defendant is an "arm of the state." Davis v. Lakewood, No. 03-1025, 2005 WL 1863665, at *3 (D.N.J. Aug. 4, 2005) (citing Chisolm, 275 F.3d at 323); Florence v. Board of Chosen Freeholders of County of Burlington, 595 F.Supp.2d 492, 514 (D.N.J. 2009) ("Some entities may be entitled to immunity, however, if deemed an arm of the state").

The Fitchick court also set forth a three factor test that this Court must use to determine whether each defendant is indeed an "arm of the state" entitled to sovereign immunity: "(1) whether payment of a judgment resulting from the suit would come from

the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." Fitchik, 873 F.2d at 659; see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 948 F. Supp. 400, 4009 (D.N.J. 1996) (precluding suit where "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.'") (internal citation omitted).  In applying this three-factor test, the Third Circuit noted that not all three factors are to be given equal weight; rather, the first inquiry, whether any judgment would be paid from the state treasury, is the most important question, and generally proves dispositive. Fitchik, 873 F.2d at 659; Febres, 445 F.3d at 229; Davis, 2005 WL 1863665, at *3.

When considering whether a county prosecutor's office is entitled to sovereign immunity, a court must first determine in which capacity the prosecutor's office and officials were acting when the actions that gave rise to the plaintiff's claims took place. Generally, county prosecutors and their officials are immune from suit arising from actions related to law enforcement policy.  Coleman v. Kaye, 87 F.3d 1491, 1501 (3d Cir. 1996); see Beightler, 2009 WL 2562717, at *2 ("We recognized in Coleman that county prosecutorial offices conducted two distinct sets of functions: (1) the administrative functions of operating their offices, and (2) the classic law enforcement and investigative functions for which they are chiefly responsible").  In Coleman, the Third Circuit distinguished between nonactionable conduct, those tasks that are clearly prosecutorial, and those that clearly fall outside the ambit of acts taken in furtherance of law enforcement policy:

> The Dunne court stated that "[c]ounty prosecutors' detectives possess a hybrid status."[Dunne v. Fireman's Fund American Insurance Co., 69 N.J. 244 (1976)].  Our review of New Jersey law has convinced us that the same can be said about county prosecutors.  When county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State.  But where, as here, the county prosecutor decided whether an

9

>employee at his or her office is worthy of an open promotion, the county prosecutor is performing an administrative function on the local level entirely unrelated to the duties involved in criminal prosecution.

Coleman, 87 F.3d at 1505-06.  Where, as is the case here, the plaintiff asserts a cause of action against an individual in his or her official capacity, the court construes the plaintiff's claim as an attempt to evade the Eleventh Amendment and sue a state agency or entity of which the defendant is an agent.  Gregory v. Checi, 843 F.2d 11 (3d Cir. 1988). As stated supra, Plaintiff does not contest the motion, and as such, does not contest the general assertion that the alleged incident arose from the Mercer County Defendants acting in accordance with law enforcement policy when they sought to arrest Plaintiff for failing to appearing in court.  Thus, the Mercer County Defendants' actions were taken under the supervision of the New Jersey Attorney General's office, and as a result, any judgment would be paid of the state treasury.  See Landi v. Borough of Seaside Park, No. 07-5319, 2009 WL 606141, at * 1 (D.N.J. March 9, 2009) (holding that sovereign immunity applied to the plaintiff's claims against the Ocean County Prosecutor's Office); Kandil v. Yurkovic, No. 06-4701, 2007 WL 4547365, at *1 (D.N.J. Dec. 18, 2007) (holding sovereign immunity applied to a county prosecutor's office, barring all of plaintiff's claims, including claims of negligent training and supervision). Since the State of New Jersey has not consented to suit in federal court against itself, Plaintiff's claims against the Mercer County Defendants in their official capacities is granted.

### a. Persons Amenable to Suit under 42 U.S.C. § 1983

Plaintiff's claims against the Mercer County Defendants alleging constitutional violations must be dismissed because they are not "persons" within the purview of 1983. Specifically, 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In order to be liable within the meaning of the statute, a defendant must be a person. In Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989), the Supreme Court held that a State, or an official acting in his or her official capacity for the State, is not a person within the meaning of 42 U.S.C. §1983. Specifically, the Court noted that Congress did not intend to override the immunity protections afforded to a state and its officials under the Eleventh Amendment. Id. Thus, a cause of action brought pursuant to §1983, cannot be asserted against the State, its agencies, or its officials acting in their official capacities. Accordingly, Plaintiff's § 1983 claims against the Mercer County Defendants in their official capacities are dismissed.

**b. Plaintiff's State Law Claims**

In addition to claims brought pursuant to 42 U.S.C. §1983, Plaintiff alleges state law claims for assault and battery. The Mercer County Defendants seek dismissal of the claims, arguing that sovereign immunity bars state law claims against state entities. The Court agrees.

The Court finds that Plaintiff's state law claims against the Mercer County Defendants acting in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment provides that a court may not grant "relief against state officials on the basis of state law, whether prospective or retroactive." Pennhurst, 465 U.S. at 106. In Pennhurst, the Supreme Court clarified that "neither pendent jurisdiction nor any other

11

basis of jurisdiction may override the Eleventh Amendment.  A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Id. at 121 (discussing the tension between pendant jurisdiction and Eleventh Amendment jurisprudence).

Here, Plaintiff alleges that the Mercer County Defendants violated a number of state laws while executing their duties as agents of the state. As stated supra, Plaintiff's claims seek judgment that will ultimately be paid from the state treasury.  Additionally, the MCPO is an agent of the state, acting under the auspices of the Attorney General. Accordingly, Plaintiff's state claims against the Mercer County Defendants in their official capacities are barred by the Eleventh Amendment.

**D. Plaintiff's Failure to File a Grievance Concerning the Alleged Assault**

Because the Court has dismissed Plaintiff's federal claims against the Mercer County Defendants in their official capacities, the Court must now consider whether Plaintiff may proceed against the Mercer County Defendants in their individual capacities.  To that end, the Mercer County Defendants contend that Plaintiff's failure to file a grievance through NJSP's administrative grievance procedure precludes Plaintiff from asserting his constitutional claims before this Court because Plaintiff has not fully exhausted the administrative remedies. To support their position, Mercer County Defendants primarily rely on the Prison Litigation Reform Act ("PLRA"), which requires, inter alia, that a prisoner must exhaust all administrative remedies available to him before proceeding with his federal claims in court:

> No action shall be brought with respect to prison conditions, under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies that are available are exhausted.

42 U.S.C. 1997(e)(a); Wallace v. Kato, 127 S.Ct. 910, 921 (2007) ("[F]ailure to exhaust is an affirmative defense under the PLRA, and. . .inmates are not required to specially plead or demonstrate exhaustion in their complaint."). The Act requires proper exhaustion, a term that finds it roots in administrative law, and is defined by courts as "compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Based on the PLRA, Mercer County Defendants argue that because Plaintiff is a prisoner, any civil action he wishes to take against the officers who allegedly battered him must have been preceded with Plaintiff's proper exhaustion of NJSP's grievance procedure. This Court disagrees.

First, Mercer County Defendants cite to, and the Court is aware of, no case where a prisoner plaintiff has been barred from asserting federal claims arising from an incident unrelated to his sentence or his time in prison. Generally, the PLRA acts to bar those claims not previously filed through the proper administrative channels which are germane to prison conditions, i.e. overcrowded cells, not claims that predate the prisoner's incarceration. If Congress so intended, it could have drafted section 1997(e)(a) of the PLRA to preclude any suit where the prisoner fails to properly exhaust administrative remedies. Instead, Congress clearly limited the reach of the exhaustion bar with the words "with respect to prison conditions." The Court finds that Mercer County Defendants' interpretation is not only far too reaching but contradicts section 1997's express language. Accordingly, the Court finds that Plaintiff's federal and state claims are not barred by the PLRA.[3]

---

[3]Notably, even if section 1997 applied, it would not act as a bar to Plaintiff's state claims, as the Act only bars those claims brought under section 1983 and other federal claims.

**E. Qualified Immunity**

Before turning to the merits of Plaintiff's claims, the Court must determine whether the Mercer County Defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, state actors performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). More simply stated, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 199 (2001) (citation omitted). This defense strikes a balance, shielding those officers from liability that mistakenly, but reasonably, believed their actions were lawful while permitting a plaintiff to recover against those defendants that knowingly violated the plaintiff's rights. Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007).

Recently, the Supreme Court modified the two-step qualified immunity test it set forth in Saucier. Under Saucier, this Court would first have to determine "whether there is even a wrong to be addressed in an analysis of immunity." "If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." Curley, 499 F. 3d at 207. The second step of the Saucier analysis asks whether a reasonable officer would have known his conduct to be unlawful given the specific circumstances and facts of the case. Saucier, 533 U.S. at 199. In other words, a defendant is not entitled to qualified immunity if, at the time of the incident, the right that was violated was clearly established. Torisky v. Schweiker, 446 F.3d 438, 443 (3d Cir. 2006) ("This second inquiry 'must be undertaken in light of the specific context of the case.'").

14

However, in <u>Pearson v. Callahan</u>, 129 S. Ct. 808 (2009), a unanimous Court relaxed the rigid two-step application of the <u>Saucier</u> analysis. By noting that in many instances a court need not reach whether a constitutional violation is alleged to determine if qualified immunity is appropriate,[4] the Court stated that the first prong "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." <u>Id.</u> at 818. In addition, "[a]lthough the first prong of the <u>Saucier</u> procedure is intended to further the development of constitutional precedent," the first prong "create[s] a risk of bad decisionmaking," specifically in those instances where a court decides a rather nuanced constitutional claim early on in litigation where the factual basis for the claims have not been fully developed through discovery. <u>Id.</u> at 819. Thus, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Id.</u> at 818; <u>Bayer v. Monroe County Children and Youth Services</u>, --- F.3d ----, 2009 WL 2477627, at *2 n.5 (3d Cir. 2009) (finding that even if plaintiff was constitutionally entitled to a post-deprivation hearing, the second prong of <u>Saucier</u> analysis afforded defendants qualified immunity).

In accordance with <u>Pearson</u>, the Court shall forego the first prong of the <u>Saucier</u> analysis and determine whether at the time of the alleged incident, the Mercer County

---

[4] The Court also noted that in these cases, where it is evident that there was no violation of clearly established law, a lower court may not give proper consideration to the more crucial question of whether a constitutional violation is alleged, creating a risk of "'uttering pronouncements that play no rule in their adjudication.'" <u>Pearson</u>, 129 S.Ct. at 820 (quoting <u>Horne v. Coughlin</u>, 191 F.3d 244, 247 (2d Cir. 1999)).

Defendants "reasonably misapprehend[ed] the law governing the circumstances [they] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). That determination "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. In excessive force cases, the issue is not whether the use of force was excessive under the circumstances, but rather, whether "the right the official is alleged to have violated [was] 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 201-02.

In this case, a reasonable official, under similar circumstances, would not have thought twice to use some modicum of force to subdue a fleeing suspect that shoved another officer while attempting to effectuate an arrest. Indeed, based on the evidence submitted to the Court, it would have been abundantly clear to the reasonable officer, after Plaintiff failed to open the hotel room door and shoved Special Agent Casey, that the suspect would not submit peacefully. In reaching this determination, the Court is mindful that in excessive force cases, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements-in circukmstances that are tense, uncertain, and rapidly evolving." Graham v. Connor, 490 U.S. 386, 396-97 (1989). Here, the evidence indicates that after announcing their presence, Defendants entered the motel room, at which point, Plaintiff attempted to flee. It was not until after Plaintiff shoved Casey that Casey (and presumably the other defendants)[5] thought that shoving Plaintiff

---

[5]Although this litigation was initiated over three years ago, Plaintiff has failed to identify which officers of the numerous defendants named actually engaged in the assault. Instead, Plaintiff alleges in a blunderbuss manner that all the defendants actively assaulted Plaintiff. All this Court has, at this point, is Plaintiff's allegations, as Plaintiff has failed to engage in any discovery whatsoever.

16

was necessary. Again, because Plaintiff has failed to submit opposition thereto, the Court must assume that the police report, as drafted, is an accurate representation of the events as they occurred. The Court concludes that a reasonable officer in the position of the Mercer County Defendants would have understood that some degree of force was appropriate to apprehend Plaintiff once he shoved Casey and attempted to flee and that the force used, shoving Plaintiff, was not excessive under the circumstances.[6] Accordingly,

---

[6] In addition, the police report does not indicate that any of the Mercer County Defendants even made physical contact with Plaintiff. The report only states that Casey, after being shoved by Plaintiff, shoved Plaintiff through the sliding glass door. Thus, there is even a question as to whether the Mercer County Defendants were personally involved in the alleged assault of Plaintiff. As this Court previously stated in its August 20, 2008 Opinion, "[p]ersonal involvement is a necessary element of Plaintiff's constitutional claims." August 20, 2008 Op. pp. 6-7 (citing Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

Although the Mercer County Defendants have not provided sworn affidavits that aver, for instance, that they were not in the room when Plaintiff was shoved, Plaintiff failed to provide any evidence whatsoever by way of affidavit, either his own or his girlfriend's, who was a witness to the alleged incident, nor opposition to this motion, that refutes the Mercer County Defendants' position set forth herein. After three years, Plaintiff has not gone beyond the bald allegations of his Complaint and Amended Complaint in demonstrating that his claims have merit. Unlike a Motion to Dismiss, where cursory allegations may carry the day, on a Motion for Summary Judgment, the non-movant must come forward with more than the generalizations set forth in a pleading. Here, the record reveals not a scintilla of evidence proffered by Plaintiff that contradicts the version of events as set forth in the police report. Indeed, it is worth noting that as an attachment to Plaintiff's Amended Complaint, Plaintiff provided the police report for this Court's review, without a supporting affidavit or evidence to the contrary.

Time after time, this Court has bent over backwards to provide Plaintiff with an opportunity to pursue and substantiate his claims, only for Plaintiff to fail to oppose motions or inform the Court of his change in address or to comply with discovery orders. As just one example, after the Court issued its Opinion and Order dated August 21, 2008 dismissing Plaintiff's claims unless he informed the Court otherwise, it was later revealed that Plaintiff was transferred to a different facility. The Court, upon finding out that Plaintiff may not have received the August 21, 2008 Opinion and Order, directed the defendants to forward a copy to Plaintiff's new address, even though Plaintiff failed to inform this Court, as he is required to do, of this change. This failure is but another example of Plaintiff's lackadaisical attitude towards this litigation. Thus, this Court is

the Mercer County Defendants are entitled to qualified immunity with respect to Plaintiff's federal claims.

### E. Plaintiff's State Law Claims and the New Jersey Tort Claims Act

Finally, the Court addresses the Mercer County Defendants' argument that they are immune from Plaintiff's state law tort claims pursuant to the New Jersey Torts Claim Act ("NJTCA") as the police report detailing Plaintiff's arrest indicates that Plaintiff was attempting to evade arrest when he was injured. The Mercer County Defendants find support for this argument in the language of the NJTCA itself, N.J.S.A. 59:5-2(b), which states:

> Neither a public entity nor a public employee is liable for:
>
> a. An injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release;
>
> b. any injury caused by:
>
> (1) an escaping or escaped prisoner;
>
> (2) an escaping or escaped person;
>
> (3) a person resisting arrest or evading arrest;
>
> (4) a prisoner to any other prisoner ; or
>
> c. any injury resulting from or caused by a law enforcement officer's pursuit of a person

The statute confers upon officials absolute immunity for injuries resulting from the pursuit of a suspect. An official forfeits that immunity when he engages in "willful misconduct."

---

obligated to apprise Plaintiff that if he wishes for his claims to proceed against the remaining defendants, he will have to come forward at some point with evidence, beyond his pleadings, that support his version of events.

Alston v. City of Camden, 168 N.J. 170, 182 (2001) (concluding that the state legislature, in passing the NJTCA, sought to extend absolute immunity to officials in pursuit situations, absent willful misconduct); Tice v. Cramer, 133 N.J. 347 (1993) ("Nothing in this act shall exonerate a public employee form liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."). Willful misconduct falls somewhere "between simple negligence and the intentional infliction of harm." While not explicitly defined by the statute, the New Jersey Supreme Court has noted that willful misconduct is roughly "the equivalent of reckless disregard for safety." Alston, 1680 N.J. at 182 (quoting the lower court's jury instruction); Brittingham v. City of Camden, No. 07-190, 2009 WL 1410740, at 11 (D.N.J.May 18, 2009) (quoting Fielder v. Stonack, 141 N.J. 101, 124 (1995)).

Here, in support of their argument, the Mercer County Defendants also submit to the Court the police report from the night of Plaintiff's arrest. In his report, Detective Angarone described how Plaintiff reacted once the defendants entered his motel room:

> Upon entering the room, task force officers. . .observed Reed attempting to exit the room out of the sliding glass door, however it appeared he was having trouble with the lock. Upon seeing and hearing our presence, Reed looked in our direction and continued to try and open the sliding glass door. Upon seeing this, task force members. . .immediately ran towards Reed. At this point, Special Agent Casey attempted to place Reed under arrest. As Special Agent Casey attempted to grab Reeds hand, Reed lunged at Special Agent Casey and pushed him in the chest. As this occurred, Special Agent Casey grabbed Reeds hands and pushed Reed away from him back into the sliding glass door. The sliding glass door shattered and Reed fell through onto the small rear deck of the hotel room.

Exh. A, Police Report. Since Plaintiff has not opposed the motion, "the Court 'will accept as true all material facts set forth by the moving party with appropriate record support,'" Carp v. Internal Revenue Service, No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28,

2002) (quoting <u>Anchorage Associates v. V.I. Bd. Of Tax Rev.</u>, 922 F.2d 168, 175 (3d Cir. 1990), and thus must conclude that Plaintiff, upon observing the defendants enter his motel room, attempted to evade capture. Because Plaintiff was injured while attempting to flee from the defendants and the report does not indicate that the defendants acted with a reckless disregard for Plaintiff's safety, the NJTCA provides the Mercer County Defendants with immunity from Plaintiff's state law claims for assault and battery. Accordingly, Plaintiff's state law claims for assault and battery are dismissed with respect to the Mercer County Defendants.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's federal and state claims against Mercer County Defendants in their official capacities are barred by the Eleventh Amendment.  In addition, the Mercer County Defendants are immune from suit under qualified immunity for actions taken in their individual capacity.  Further, pursuant to the NJTCA, the Mercer County Defendants are immune from suit with respect to Plaintiff's state law claims for assault and battery.  With two defendants remaining, Hamilton Police Officers Gadsby and Diszler, the Court refers the matter to the Honorable Tonianne J. Bongiovanni, U.S.M.J. for a final pretrial conference, notwithstanding any outstanding discovery issues.


Dated October 1, 2009                                             /s/Freda L. Wolfson
                                                                  Freda L. Wolfson, U.S.D.J.